UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

____

PAUL AWAK THONGJENG,

          Plaintiff,                        Case No. 1:25-cv-660

v.                                           Honorable Sally J. Berens

UNKNOWN WADE et al.,

          Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis* in a separate order. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S.

344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility, (LRF) in Muskegon Heights, Muskegon County, Michigan.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff sues LRF Corrections Officer Unknown Wade. Plaintiff also sues MDOC Director Heidi E. Washington, the MDOC, and Administrative Law Judge Unknown Jollands. Plaintiff names Defendants in their personal and official capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on September 23, 2024, at approximately 9:52 a.m., he was placed in a segregation room with another inmate, Jones #0516141. (*Id.*, PageID.3.) Plaintiff states that inmate Jones was on suicide watch and was wearing a suicide garment. (*Id.*) Plaintiff states that within three minutes, inmate Jones removed his garment and exposed himself to Plaintiff. (*Id.*) Plaintiff began yelling and calling "PREA" for approximately thirty minutes but received no assistance. (*Id.*)

Plaintiff states that following the incident, Defendant Wade wrote a misconduct ticket on Plaintiff accusing him of telling inmate Jones to expose himself. (*Id.*) Plaintiff asserts that he was found guilty of the misconduct and that Defendant Jollands failed to give him the appeal paperwork in a timely manner, which deprived Plaintiff of his right to appeal the misconduct. (*Id.*) Plaintiff states that he wrote a PREA report and contacted the ombudsman's office for assistance, but did not receive a response. (*Id.*)

A copy of the misconduct record is attached to Plaintiff's complaint as an exhibit. (ECF No. 1-1, PageID.8–11.) In the class I misconduct report, Defendant Wade stated:

> At the above date and time I walked over to room 76 where Thongjeng #668368 was locked in a cage awaiting to take a drug test and prisoner Jones #516141 was on 15 minute watch awaiting a cell. When I walked over to the door, Thongjeng stated out loud to prisoner Jones, "Man pull out your dick and make it hard for me so I can write a PREA on Wade for putting me in this cage next to a naked guy, if you don't do it, I'm going to write your ass a PREA too bitch." Prisoner Jones then proceeded to pull his penis out and expose himself to prisoner Thongjeng and myself. I gave prisoner Jones a direct order to put [sic] cover his penis up and put it away so it cannot be observed by other people. Prisoner Thongjeng made prisoner Jones pull out his penis and threatened him with a false report if he didn't. Thongjeng also stated he was going to make false PREA statements on myself too.

(*Id.*, PageID.8.)

Defendant Jollands was the hearing officer who conducted Plaintiff's hearing, which was held on October 11, 2024. (*Id.*, PageID.9–10.) Defendant Jollands noted that Plaintiff denied telling inmate Jones to expose himself and claimed that Defendant Wade was not in an area where he could have overheard Plaintiff make that statement. Plaintiff stated that he was going to write a PREA on Defendant Wade because he had placed him in a cell with someone who was nude. (*Id.*, PageID.9.) When asked if he had any more to add, Plaintiff stated that Defendant Wade had come and looked at the cameras and that at 9:54 a.m., Ms. Douglas (not a Defendant) said that inmate Jones was nude. At this point, Defendant Wade told inmate Jones to cover up. (*Id.*)

In the reasons for the findings, Defendant Jollands stated that when seen by the Hearing Investigator, Plaintiff provided a statement but did not request any additional evidence. (*Id.*) Defendant Jollands noted that Plaintiff mentioned the camera for the first time during the hearing. (*Id.*) Defendant Jollands also stated:

> The Officer reports in room 76, Thongjeng was locked in a cage waiting to take a drug test and Jones was on 15 minute watch awaiting a cell and Thongjeng stated to prisoner Jones, "Man, pull out your dick and make it hard for me so I can write a PREA on Wade for putting me in this cage next to a naked guy. If you don't do it, I'm going to write your ass a PREA too bitch." Jones then pulled his penis out and exposed himself to prisoner Thongjeng and this officer.
>
> Prisoner admits he was in the room with prisoner Jones and Jones exposed his sexual organ but denies telling Jones to expose himself. While prisoner's assertions are considered, evidence is more supportive of the charge. First, the officer was at the doorway to the room the prisoners were in, so the officer could logically hear what prisoner said. Second, prisoner threatened to write a PREA on the other prisoner if he did not do as he said. It is logical to conclude that the other prisoner took this threat seriously and exposed himself. Third, whether prisoner has filed a grievance on the officer does not prove or disprove this charge. Finally, there is no evidence to support the officer falsified this report due to this grievance or for some other reason.
>
> I am convinced prisoner told the prisoner in the other cage to expose his sexual organ. Telling another person to expose their sexual organ and make it hard for them are words of a sexual nature because he told the other person to expose and sexually arouse himself. These words were directed at another person and this statement was witnessed and heard by the person he said it to as well as the officer.

5

> These words are disrespectful, serve no valid purpose, and were made to harass and degrade the other prisoner and staff member. THE CHARGE IS UPHELD.

(*Id.*, PageID.10.)

Plaintiff also attaches a copy of the grievance he filed on September 23, 2024, in which he states that he had been placed in the segregation cage after he provided a urine sample for a drug test ordered by Assistant Deputy Warden Jensen (not a Defendant) because the sample was determined to be merely water. (*Id.*, PageID.12.) Plaintiff states that he was not observed while urinating and that there was no evidence that it was water. (*Id.*) Plaintiff states that he believes he was placed in the segregation room with inmate Jones because Defendant Wade wanted to punish him for providing a false urine sample. (*Id.*, PageID.13.)

Plaintiff seeks compensatory, punitive, and nominal damages. (*Id.*, PageID.4.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

6

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because Section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under Section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant MDOC

As an initial matter, Plaintiff brings claims against the MDOC. However, "the MDOC, is not a 'person' within the meaning of § 1983." *Parker v. Mich. Dep't of Corr.*, 65 F. App'x 922, 923 (6th Cir. 2003) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Accordingly, Plaintiff has failed to state a claim against Defendant MDOC.

### B.    Defendant Washington

Plaintiff fails to allege that Defendant Washington took any action against him or even to mention her in the body of his complaint. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation

Case 1:25-cv-00660-SJB    ECF No. 5, PageID.30    Filed 08/12/25    Page 8 of 17

must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, Section 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee*, 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendant Washington encouraged or condoned the conduct of her subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, Plaintiff fails to allege any facts at all about her conduct. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under Section

8

1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's claims against Defendant Washington appear to be premised on nothing more than respondeat superior liability, he fails to state a claim against her.

### C. Eighth Amendment

Plaintiff asserts that Defendant Wade placed him in a segregation cage and inmate Jones #0516141 was present in another cage in the same room. (ECF No. 1-1, PageID.10.) Plaintiff claims that within three minutes, inmate Jones was exposing himself to Plaintiff and that he was left in the room for 30 minutes despite the fact that he was screaming "PREA." (ECF No. 1, PageID.3.) Plaintiff states that this constitutes sexual harassment and caused him emotional distress. The Court construes these allegations as asserting an Eighth Amendment claim.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "[R]outine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v.*

9

*McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

Among the protections of the Eighth Amendment, inmates have a constitutionally protected right to personal safety. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Nevertheless, "[a]lthough 'prison officials have a duty [under the Eighth Amendment] to protect prisoners from violence at the hands of other prisoners,' it is equally clear that not 'every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials.'" *Reedy v. West*, 988 F.3d 907, 912 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 833–34 (citations and internal quotation marks omitted)). In order to state a failure-to-protect claim, a plaintiff must demonstrate (1) that he "objectively" was "incarcerated under conditions posing a substantial risk of serious harm," *Farmer*, 511 U.S. at 834, and (2) that the official acted with "deliberate indifference" to inmate safety, "meaning the official was 'subjectively aware of the risk' and 'fail[ed] to take reasonable measures to abate it.'" *Reedy*, 2021 WL 710909, at *3 (quoting *Farmer*, 511 U.S. at 829, 834, 847; *see also Greene v. Bowles,* 361 F.3d 290, 293–94 (6th Cir. 2004) (addressing whether knowing placement of a small, transgender female in a unit with a known predatory inmate amounted to deliberate indifference). In establishing the objective prong, although a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal-safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. Cty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.").

Under the circumstances alleged in the complaint, Plaintiff fails to show an objectively justifiable or reasonable fear for his personal safety. Plaintiff's only allegation involving Defendant Wade is that he placed him in the same room as inmate Jones who exposed himself to Plaintiff, and that he left him there for thirty minutes while Plaintiff yelled PREA. However, it is clear from the Hearing Report, which is attached to Plaintiff's complaint, that inmate Jones was in a separate cage in the room. (ECF No. 1-1, PageID.10.) In addition, Plaintiff alleges that the events complained of commenced at 9:52 a.m., and in the misconduct hearing, Plaintiff stated that Defendant Wade told inmate Jones to cover up after Ms. Douglas (not a defendant) said that inmate Jones was nude at 9:54 a.m. (ECF No. 1, PageID.3; ECF No. 1-1, PageID.9.) Therefore, it appears that Plaintiff was only exposed to inmate Jones's nudity for a period of two minutes. During this time, Plaintiff was not in any danger of being assaulted by or even touched by inmate Jones.

Plaintiff fails to allege facts showing that Defendant Wade knew that inmate Jones was going to expose himself to Plaintiff. Nor does Plaintiff allege facts showing that Defendant Wade failed to act once he was aware that inmate Jones was exposing himself. In fact, as part of his defense to Defendant Wade's accusation that Plaintiff had told inmate Jones to expose himself to Plaintiff so that he could write a PREA on Defendant Wade, Plaintiff asserted that Defendant Wade was "nowhere in proximity to hear" Plaintiff's comment. (*Id.*, PageID.9.)

The Sixth Circuit has held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018). In contrast, the Sixth Circuit has held that ongoing, coercive verbal harassment may rise to sexual abuse that

11

violates the Eighth Amendment. *Rafferty v. Trumbull Cnty.*, 915 F.3d 1087, 1095 (6th Cir. 2019). The *Rafferty* court found an Eighth Amendment violation when a prison official sexually harassed a prisoner by repeatedly demanding that the prisoner expose herself and masturbate while the official watched. The court noted that, in light of the coercive dynamic of the relationship between prison staff and prisoners, such demands amount to sexual abuse. *Id.* at 1096.

*Rafferty*, however, is wholly distinguishable from Plaintiff's claim. No inherently coercive power relationship exists between inmate Jones and Plaintiff. Moreover, Plaintiff does not allege that inmate Jones ever coerced Plaintiff into engaging in sexually abusive conduct. Instead, Plaintiff claims only that inmate Jones exposed himself to Plaintiff on one occasion during which he was in a separate cage and was unable to touch Plaintiff. These allegations demonstrate an isolated, brief, and not severe form of harassment and fall short of objectively serious punishment that is barred by the Eighth Amendment.

Because Plaintiff fails to allege facts which rise to the level of an Eighth Amendment violation, his Eighth Amendment claim will be dismissed.

    **D.**    **Due Process**

Plaintiff asserts that Defendant Wade wrote a false misconduct ticket on him and that Defendant Jollands deprived him of his right to appeal the misconduct conviction. The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that

deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

### 1. Defendant Wade's False Misconduct

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Plaintiff's major misconduct charge and conviction could have affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[2] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is

---

[2] According to the MDOC Offender Tracking Information System (OTIS), Plaintiff is currently serving indeterminate sentences of up to five years in prison for offenses committed on March 11, 2021, and December 20, 2021. *See* https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=668368 (last visited July 30, 2025).

13

considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." According to the misconduct hearing report, Plaintiff received 30 days' loss of privileges as a result of the misconduct conviction. (ECF No. 1–1, PageID.9.)

In *Sandin*, the Supreme Court concluded that placement in disciplinary segregation for 30 days did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

If placement in segregation for a period of 30 days does not constitute an atypical and significant deprivation then, certainly, the less severe sanction of 30 days' loss of privileges[3] falls short as well. Consequently, Plaintiff's loss of privileges did not trigger a right to due process and Plaintiff has failed to state a claim against Defendant Wade on which relief may be granted.

### 2.    Defendant Jollands's Alleged Interference with Plaintiff's Appeal

A prisoner "simply has no due process right to an appeal of a disciplinary conviction." *Christian v. Gluch*, No. 90-1348, 1990 WL 180913, at *1 (6th Cir. Nov. 20, 1990); *see also Boles v. Weist*, No. 87-1862, 1988 WL 58866, at *1 (6th Cir. June 10, 1988) ("Plaintiff does not have an inherent constitutional right to appeal his disciplinary conviction."); *Lowe v. Sockey*, 36 F. App'x 353, 360 (10th Cir. 2002) ("[T]he Supreme Court has already determined that there simply exists no due process right to such an appeal.") (citing *Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974)); *McCain v. Jackson*, No. 1:19-cv-234, 2019 WL 7900082, at *4 (S.D. Ohio Aug. 5, 2019) ("There

---

[3] Pursuant to MDOC policy, "all of the following privileges will be lost by a prisoner as a result of a 'loss of privileges' sanction:"

> A. Day room, activity room, TV room, study room, or other designated area where similar activities occur[;] B. Exercise facilities, such as yard, gym, and weight room/pit[;] C. Group meetings, such as Bible class and Jaycees, but not including primary religious worship service; this does not apply to group therapy[;] D. Out of cell hobbycraft activities[;] E. Kitchen area, including microwave, ice machine, and hot water dispenser[;] F. Direct access to general library (not law library; prisoners in segregation shall continue to have books delivered to them consistent with PD 04.05.120 "Segregation Standards")[;] G. Movies[;] H. Music practice; musical instruments[;] I. Leisure time activities offered pursuant to PD 05.03.104 "Leisure Time Activities," except as approved by Warden or designee[;]

> J. Telephone, except calls to the Office of Legislative Corrections Ombudsman and to return calls from an attorney upon request of the attorney[;] K. Visiting[, t]his applies only if hearing officer identified in the hearing report that the misconduct occurred in connection with a visit, and only with the visitor named in the hearing report[; and] L. Use of kiosk (e.g., to send/receive electronic messages or retrieve account information).

MDOC Policy Directive 03.03.105, Attach. E (eff. Aug. 26, 2024).

15

is no constitutional right to appeal from a disciplinary decision"); *Stanley v. Houle*, No. 1:20-cv-100, 2020 WL 1316511, at *4 (W.D. Mich. Mar. 20, 2020) ("[A]dministrative appeals are remedial; they are not part of the due process rights afforded to prison inmates."); *Platt v. Brockenborough*, 476 F. Supp. 2d 467, 469–70 (E.D. Pa. 2007) ("Platt contends that the absence of an appeals process violated his right to due process, but prisoners have no constitutional right to appeal the results of a disciplinary hearing."); *Chance v. Compton*, 873 F.Supp. 82, 86 (W.D. Tenn. 1994) (right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff* ). Accordingly, Plaintiff's assertion that Defendant Jollands interfered with Plaintiff's appeal does not implicate an interest protected by the Due Process Clause, and Plaintiff has failed to state a claim against Defendant Jollands on which relief may be granted.

E.  **Retaliation**

Finally, in his grievance which is attached as an exhibit to the complaint, Plaintiff states that he believes that Defendant Wade retaliated against him when he placed him in a room with inmate Jones because he believed that Plaintiff had given prison officials water instead of urine for a drug test.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Tampering with a urine sample for a drug test constitutes the interference with the administration of rules and is a class II misconduct. *See* MDOC Policy Directive 03.03.105B. Where a prisoner violates a legitimate prison regulation, he is not engaged in protected conduct. *Maben v. Thelen*, 887 F.3d 252, 266 (6th Cir. 2018) (*citing Thaddeus–X*, 175 F.3d at 395). Therefore, to the extent that Plaintiff is seeking to assert a retaliation claim, it is properly dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the entire $605.00 appellate filing fee pursuant to § 1915(b)(1). S*ee McGore*, 114 F.3d at 610-11.

A judgment consistent with this opinion will be entered.

Dated:   August 12, 2025                               /s/ Sally J. Berens
                                                       SALLY J. BERENS
                                                       United States Magistrate Judge